IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**STEVEN WAYNE ADAMS,**
**ADC #552213**                                                                                              **PLAINTIFF**

**V.**                          **CASE NO. 4:20-CV-85-KGB-BD**

**WILSON SHORT**                                                                                              **DEFENDANT**

### RECOMMENDED DISPOSITION

**I.    Procedure for Filing Objections:**

This Recommendation for dismissal has been sent to Judge Kristine G. Baker. Any party may file objections if they disagree with the findings or conclusions set out in the Recommendation. Objections should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within 14 days. If no objections are filed, Judge Baker can adopt this Recommendation without independently reviewing the record. By not objecting, parties may waive any right to appeal questions of fact.

**II.   Background:**

Steven Wayne Adams filed this civil rights lawsuit without the help of a lawyer. (Doc. No. 2) Mr. Adams complains that Wilson Short, Chief of the Dardanelle Police Department, used excessive force against him during his arrest on April 7, 2019.

Chief Short has moved for summary judgment on all claims against him. (Doc. No. 19) Mr. Adams has not responded to the motion, and the response time has passed.

**III.   Discussion:**

    A.  Standard

A party is entitled to summary judgment if—but only if—the evidence shows that there is no genuine dispute about any fact important to the outcome of the case. See FED. R. CIV. P. 56 and *Odom v. Kaizer*, 864 F.3d 920, 921 (8th Cir. 2017). The facts in this case are undisputed.

    B.  Analysis

    1.  Excessive Force Claim – Individual Capacity

In his complaint, Mr. Adams alleges that, when Defendant Short removed him from the back of a police vehicle, he struck him on the left side of his face using his right hand, "almost knocking [him] out." (Doc. No. 2 at p.4) Then, Defendant Short allegedly, choked Mr. Adams.

Defendant Short's version of the events differs from Mr. Adams's description of the incident. According to Defendant Short, when Mr. Adams arrived at the Dardanelle Police Department, he refused to get out of the patrol car. (Doc. No. 21-2 at p.2) Two officers tried to remove him from the vehicle but were unable to do so because Mr. Adams was under the heavy influence of methamphetamine. (Doc. No. 21-2 at p.2) Defendant Short states that, "Mr. Adams was foaming at the mouth and was sweating very badly." (Doc. No. 21-2 at p.2) As Defendant Short began speaking with Mr. Adams, "he became even more agitated and began yelling very loudly." (Doc. No. 21-2 at p.2) According to Defendant Short, when he raised his voice so that Mr. Adams could hear him, Mr. Adams lunged at him. (Doc. No. 21-2 at p.2) At that point, Defendant Short

2

"placed [his] right hand in front of [his] face and deflected his head." (Doc. No. 21-2 at p.2) Defendant Short's right hand made contact with Mr. Adams's left cheek "so that he could not hit [him] with his head." (Doc. No. 21-2 at p.2) Following the incident, Defendant Short and another officer removed Mr. Adams from the patrol car and placed him in a cell for a medical evaluation. (Doc. No. 21-2 at p.3)

Under the Fourth Amendment Mr. Adams had a right to be free from excessive-force during his arrest. *Jackson v. Stair*, 944 F.3d 704 (8th Cir. 2019) The question of excessive force turns on whether Defendant Short's conduct was objectively reasonable in light of the situation he confronted. *Jackson,* 944 F.3d at ___ (where excessive force claim is made against a law enforcement officer in the course of an arrest, the conduct is analyzed under an objective reasonableness standard) (citing *Graham v. Connor*, 490 U.S. 386, 394-96 (1989) Stated another way, the Court must consider Defendant Short's conduct "from the perspective of a reasonable officer present at the scene rather than the '20/20 vision of hindsight.'" *Carpenter v. Gage*, 686 F.3d 644, 649 (8th Cir. 2012) (citing *Graham*, 490 U.S. at 396)).

Furthermore, qualified immunity shields Defendant Short from liability for civil damages unless his conduct violated clearly established statutory or constitutional rights that a reasonable officer would have been aware of. *Dillard v. O'Kelley*, 961 F.3d 1048, 1052 (8th Cir. 2020) (*en banc*) (internal quotation marks omitted). "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Moore v. City of Desloge, Mo*., 647 F.3d 841, 846 (8th Cir. 2011) (citing *Ambrose v. Young*, 474 F.3d 1070, 1077 (8th Cir. 2007)). Here, the Court must determine whether the allegations

show a violation of a constitutional right that was clearly established at the time of the incident.[1] *Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009).

Here, there is a dispute as to exactly what happened as officers tried to get Mr. Adams out of the police car. In his motion and supporting documents, Defendant Short provides additional information about the events leading up to and following his altercation with Mr. Adams. That information provides a more complete picture of what occurred.

On April 7, 2020, Cindy Broyles arrived at the Dardanelle Police Department to file a complaint against Mr. Adams. (Doc. No. 21-6 at p.4) According to Ms. Broyles, Mr. Adams discharged a firearm and, as a result, a bullet struck the windshield of her vehicle. (Doc. No. 21-6 at p.4)

Officer Kisor (not a party to this lawsuit) investigated Ms. Broyles's complaint and attempted to place Mr. Adams under arrest. Mr. Adams, however, refused to submit to arrest. (Doc. No. 21-1 at p. 6; Doc. No. 21-6 at p.5) Each time Officer Kisor attempted to handcuff Mr. Adams, he pulled away and took "a fighting posture." (Doc. No. 21-1 at p.6; Doc. No. 21-6 at p.5) Officer Kisor ultimately tased Mr. Adams twice to attempt to gain control. (Doc. No. 21-1 at p.6; Doc. No. 21-6 at p.5) Mr. Adams fled from Officer Kisor, however, and locked himself in his residence. (Doc. No. 21-1 at pp.6-7; Doc. No. 21-6 at p.5)

---

[1] "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v.Luna*, 577 U.S. 7, 11 (2015) (internal quotation omitted).

When Officer Lane and Corporal Phillips arrived to assist Officer Kisor, someone other than Mr. Adams opened the front door of the house. (Doc. No. 21-1 at p.7; Doc. No. 21-6 at p.5) Once the officers went inside the house, Mr. Adams began backing away from the officers. (Doc. No. 21-1 at p.7; Doc. No. 21-6 at p.5) Officer Kisor grabbed Mr. Adams's right wrist. (Doc. No. 21-1 at p.7; Doc. No. 21-6 at p.6) Mr. Adams pulled his arm away and struck Corporal Phillips in the back of the head with his fist. (Doc. No. 21-1 at p.7; Doc. No. 21-6 at p.6) After wrestling with Mr. Adams, officers were finally able to handcuff him. (Doc. No. 21-1 at p.7; Doc. No. 21-6 at p.6) Because Mr. Adams kept pulling his legs beneath his body, the officers had to carry him to the police vehicle. (Doc. No. 21-1 at p.7; Doc. No. 21-6 at p.6)

Mr. Adams was transported without incident to the Dardanelle Police Department. On arrival, however, Mr. Adams refused to get out of the patrol car. When two officers were unable to get Mr. Adams out of the car, Defendant Short intervened. That is when the incident underlying Mr. Adams's claims occurred.

Once Mr. Adams was removed from the patrol car and placed in a cell, his aggressive behavior continued; he began punching the cell door. (Doc. No. 21-1 at p.7; Doc. No. 21-4 at p.2; Doc. No. 21-6 at p.6) At that point, officers decided to take Mr. Adams to the Yell County Detention Center. (Doc. No. 21-1 at p.7; Doc. No. 21-6 at p.6) While en route, Mr. Adams verbally threatened Officer Kisor. (Doc. No. 21-1 at p.7; Doc. No. 21-6 at p.6) When they arrived at the Yell County Detention Center, a jailer searched Mr. Adams. (Doc. No. 21-1 at p.7; Doc. No. 21-6 at p.6) The jailer located a stainless steel surgical instrument inside Mr. Adams's pants. (Doc. No. 21-1 at p.8; Doc.

No. 21-6 at p.6) Mr. Adams ultimately pleaded guilty to terroristic threatening in the first degree. (Doc. No. 21-7 at p.1) The undisputed evidence shows that Mr. Adams was behaving in a threatening, erratic manner throughout the incident.

Although the Court must view the facts in the light most favorable to Mr. Adams, it is not required to "accept unreasonable inferences or sheer speculation as fact." *Howard v. Columbia Pub. Sch. Dist.*, 363 F.3d 797, 800 (8th Cir. 2004) Given the circumstances present in this case, no reasonable jury would credit Mr. Adams's version of events. "Mere allegations, unsupported by specific facts or evidence beyond [Mr. Adams]'s own conclusions, are insufficient to withstand a motion for summary judgment." *Thomas v. Corwin*, 483 F.3d 516, 527 (8th Cir. 2007).

Here, Defendant Short reacted to a volatile and combative individual who was under the influence of methamphetamine. Taking Mr. Adams's condition and conduct into consideration, reasonable law enforcement officers would not consider Defendant Short's response to the situation a violation of Mr. Adams's rights. Accordingly, Defendant Short is entitled to qualified immunity.

　　2.　Official Capacity Claims

Official-capacity claims against Defendant Short are, in effect, claims against the City of Dardanelle. *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). Local governments, such as the City of Dardanelle, can be held liable in cases such as this only when an employee violates a prisoner's rights while carrying out a

municipal policy or custom.[2] *Monell v. New York Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). *Id.; Jenkins v. County of Hennepin, Minn.*, 557 F.3d 628, 632 (8th Cir. 2009). Here, Mr. Adams does not allege that he suffered any injury as a result of a City of Dardanelle policy or custom. Official-capacity claims, therefore, should be dismissed.

## IV.   Conclusion:

The Court recommends that Defendant Short's motion for summary judgment (Doc. No. 19) be GRANTED. Mr. Adams's claims against Defendant Short should be DISMISSED, with prejudice.

DATED this 19th day of November, 2020.

_____
UNITED STATES MAGISTRATE JUDGE

---

[2] For purposes of § 1983, a policy is a "deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Marksmeier v. Davie*, 622 F.3d 896, 902 (8th Cir. 2010). To establish a custom, a plaintiff must prove that the municipality engaged in a continuing pattern of unconstitutional misconduct, not just a single unconstitutional act. *Id.* at 902-903.